UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD A. RINES,

                Plaintiff,           Civil Action No. 16-13887
                                        Honorable Matthew F. Leitman
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 16]**

Plaintiff Harold Rines ("Rines") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [13, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Rines is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Rines' Motion for Summary Judgment [13] be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.      REPORT

### A.      Procedural History

On February 19, 2014, Rines filed an application for DIB, alleging a disability onset date

of September 23, 2013.[1]  (Tr. 168-74).  This application was denied initially on June 26, 2014.

(Tr. 87-90).  Rines filed a timely request for an administrative hearing, which was held on

October 16, 2015, before ALJ Paul W. Jones.  (Tr. 27-69).  Rines, who was represented by

attorney Patrick Marutiak, testified at the hearing, as did vocational expert Heather Benton.

(*Id.*).  On November 13, 2015, the ALJ issued a written decision finding that Rines is not

disabled under the Act.  (Tr. 14-22).  On September 24, 2016, the Appeals Council denied

review.  (Tr. 1-5).  Rines timely filed for judicial review of the final decision on November 2,

2016.  (Doc. #1).

### B.    Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be

determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity,
> has a severe impairment that is expected to last for at least twelve months,
> and the severe impairment meets or equals one of the impairments listed in
> the regulations, the claimant is conclusively presumed to be disabled

---

[1] Rines' date last insured is June 30, 2014.  (Tr. 14).  Thus, he must establish disability on or
before that date in order to be entitled to DIB.

regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps .… If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Rines' Reports and Testimony

At the time of the administrative hearing, Rines was 53 years old, and at 6' tall, weighed 190 pounds. (Tr. 30-31). He was living in a mobile home with his wife, who had "stage 4 COPD [chronic obstructive pulmonary disease]" and was receiving disability benefits. (Tr. 33-34, 206). Rines completed high school and one year of college but had no further education or training. (Tr. 34, 198). Previously, he worked in construction, in factories, and as a maintenance man for a mobile home community; however, he stopped working in September 2013 when he had his last (of six) shoulder surgeries and his condition became too painful. (Tr. 33, 37, 40-47).

Rines alleges disability as a result of bilateral shoulder pain, a bulging disc in his back, left ankle pain, depression, and anxiety. (Tr. 197). Additionally, Rines appeared at the administrative hearing with crutches, testifying that he had torn the meniscus in his right knee and was scheduled for surgery a few days later. (Tr. 31-33, 52). With respect to his shoulders, Rines testified that reaching above his waist is painful, saying he "can't even hold [his] arms out

in front of [him] for very long without anything in them, let alone carry anything." (Tr. 51). In addition to shoulder pain, he also experiences pain in his back and legs, which makes it difficult to concentrate, as well as nausea and diarrhea several days a week (which he attributed to the Norco pills he takes four to six times most days). (Tr. 37-39). Previously, he took both Xanax and Prozac, but he stopped taking these medications "because of anxiety and suicidal thoughts." (Tr. 52-53).

In terms of his daily activities, Rines has no difficulty with personal care. (Tr. 207). At the hearing, he testified that he takes out the trash and mows the lawn with a riding mower, but his wife "does everything else," including preparing meals, laundry, and grocery shopping.[2] (Tr. 54-55). Rines is able to drive and visits his mother three times a week. (Tr. 58, 209-10). He has difficulty sleeping at night because of pain and racing thoughts. (Tr. 53-54, 207). He testified that he cannot stand for more than 5-10 minutes at a time and "probably lay[s] down ten hours of the day." (Tr. 54, 58-59).

### 2. Medical Evidence

The Court has thoroughly reviewed Rines' medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Heather Benton testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 59-68). The ALJ asked the VE to imagine a claimant of Rines' age, education, and work experience who can perform light work, with the following additional limitations: can only

---

[2] Somewhat inconsistently, however, Rines indicated in an April 14, 2014 Function Report that he is able to vacuum, care for pets, prepare meals, shop for groceries, and help his wife with housework. (Tr. 207-09).

lift/carry up to 10 pounds occasionally; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; occasionally reach overhead; frequent exposure to vibration and hazards; simple, routine, repetitive tasks; only occasional changes in the work setting; and only occasional interaction with the public, co-workers, and supervisors. (Tr. 61-65). The VE testified that the hypothetical individual would not be capable of performing any of Rines' past relevant work. (*Id.*). However, the VE testified that the hypothetical individual would be capable of working in the representative positions of hand packager (100,000 jobs nationally), equipment cleaner (25,000 jobs), and production worker (100,000 jobs). (*Id.*).

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Rines did not engage in substantial gainful activity between September 23, 2013 (the alleged onset date) and June 30, 2014 (the date last insured). (Tr. 16). At Step Two, he found that Rines has the severe impairments of status post bilateral shoulder surgeries, lumbar herniated disc, and affective and anxiety disorders. (*Id.*). At Step Three, he found that Rines' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 17).

The ALJ then found that Rines retains the residual functional capacity ("RFC") to perform light work, with the following additional limitations: can only lift/carry up to 10 pounds occasionally; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; occasionally reach overhead; frequent exposure to vibration and hazards; simple, routine, repetitive tasks; only occasional changes in the work setting; and only occasional interaction with the public, co-workers, and supervisors. (Tr. 18).

At Step Four, the ALJ determined that Rines is unable to perform any of his past relevant

work.  (Tr. 21).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Rines is capable of performing a significant number of jobs that exist in the national economy. (*Id.*).  As a result, the ALJ found that Rines is not disabled under the Act.  (Tr. 22).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13;

*Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

## F.     Analysis

In his motion, Rines argues that the ALJ erred in: (1) discounting the medical opinions of his treating physician, Kenneth Price, D.O.; and (2) evaluating his subjective complaints. (Doc. #13 at 10-17). Each of these arguments is addressed below.

### 1.     The ALJ Properly Evaluated the Opinions
#### of Rines' Treating Physician, Dr. Kenneth Price

Rines first argues that the ALJ erred in discounting the opinions of his treating physician, Dr. Price. (Doc. #13 at 10-14). Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other

substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406 (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

At issue in this case are two medical opinions issued by Dr. Price. The first, dated August 11, 2014 (more than one month after Rines' date last insured), stated that Rines:

> … has had a history of bilateral shoulder pain for several years. He had had three surgeries on his right shoulder and three surgeries on his left shoulder for rotator cuff tears. Consequently, he has no strength in either shoulder and is unable to elevate his arms above shoulder height, and therefore, is unable to do any overhead lifting or reaching.
>
> He also, has a history of a left ankle fracture in 1999, with surgery requiring four screws in the ankle. He has had chronic left ankle pain for 15 years. It has been worse the past few years as three of the four screws are broken, and he is unable to do any standing or walking for any length of time due to ankle pain.
>
> In addition to his shoulder and ankle problems, he has a herniated lumbar disc. This has been stable over the years, but he still has had low back pain from time to time, which is aggravated by bending and lifting. He

has limited range of motion in his lo[w] back and is restricted to lifting, pulling and pushing to no more than 15 pounds.

Given these three permanent physical limitations, [Rines] is unable to work and needs to be on Social Security Disability Insurance.

(Tr. 319).

At the July 2014 examination just preceding this opinion, Dr. Price advised Rines to "[r]eturn if symptoms worsen or fail to improve." (Tr. 321). But, Rines did not return to see Dr. Price until January 21, 2015, and only then to "discuss his disability forms for Social Security" (stating "no other concerns"). (Tr. 330).

On that day, Dr. Price completed the second opinion in question – a Medical Source Statement form in which he opined that Rines was "unable to lift or carry more than 5 [pounds]" and "unable to bring shoulders above chest level." (Tr. 326-28). Five days later, Dr. Price signed an addendum to this opinion, stating that the limitations in the Medical Source Statement "were in effect as of September, 2013." (Tr. 329).

The ALJ specifically considered these opinions but gave them no weight, reasoning as follows:

These opinions are not consistent with or supported by the record as a whole. In addition, these opinions are after claimant's date last insured. Furthermore, Dr. Price is not a specialist and the issue of disability is reserved for the Commissioner.

(Tr. 20). Rines now argues that the ALJ erred in "giving two unsupported reasons and a third which was not relevant." (Doc. #13 at 8). The Court disagrees.

Rines first challenges the ALJ's decision to discount Dr. Price's opinions as not consistent with or supported by the record as a whole, claiming that this is "meaningless boilerplate that can be cut-and-pasted in any decision" and asking "what portion of this 360-page record is the ALJ referring to?" (Doc. #17 at 3; Doc. #13 at 11). If, as Rines asserts (Doc. #17 at

2), the above three sentences were all the ALJ had said on this issue, the Court might agree; however, in the paragraph directly following his discussion of Dr. Price's opinions, the ALJ explicitly discussed the medical evidence he believed to be inconsistent with these opinions. (Tr. 20-21).

For instance, Dr. Price opined in August 2014 that Rines had "no strength in either shoulder" and was "unable to do any standing or walking for any length of time …." (Tr. 319). But, the ALJ cited numerous pieces of medical evidence that were inconsistent with those opinions. For instance, the ALJ noted: (1) that in December 2013, Rines' physical therapist observed "improved mobility of the right shoulder at discharge" (Tr. 20, 293[3]); (2) Rines' own self-reports, indicating that "he was shoveling and carrying five gallon containers" (albeit with some pain), and that he "shared the cooking and cleaning with his wife" (Tr. 20, 207-09, 315); (3) that at a June 2014 examination, the consultative examiner, Thuy Nguyen, D.O., found Rines had full muscle strength throughout, normal gait and station, negative straight leg raise test, did not use an assistive device for ambulation, and could bend forward, squat, and heel and toe walk without difficulty[4] (Tr. 20, 309); and (4) that the consultative psychological examiner, Michael Brady, Ph.D., observed that Rines' posture and gait were unremarkable (Tr. 20, 315).

Similarly, Dr. Price opined that Rines could never perform postural activities such as climbing, balancing, kneeling, crouching, crawling, and stooping. (Tr. 327). Again, however, the ALJ noted that Dr. Nguyen's June 2014 physical examination showed that Rines had no

---

[3] Although Rines complained of deltoid soreness, tenderness and tightness, this record indicates that Rines reported "improved pain tolerance for his exercises." (Tr. 293). He made a similar report of improved pain to another doctor in January 2014. (Tr. 300). The December 2013 record also reflects that Rines was "planning to work at a new job that requires less manual labor." (*Id.*).

[4] As a result, Dr. Nguyen opined that Rines was able to lift below 90 degrees with no restrictions and that Rines had no restrictions with sitting, standing, or walking. (Tr. 312). The ALJ gave this opinion great weight (Tr. 19), a conclusion Rines does not challenge.

trouble performing these activities. (Tr. 20, 309). Finally, the ALJ discounted Dr. Price's opinion that Rines would have difficulty with concentration (Tr. 328), correctly noting that Dr. Price's notes contain numerous "essentially normal mental status exams" (Tr. 20, 241, 242, 254, 320, 330, 337, 339, 352, 354) and that Rines received no psychological treatment during the relevant period (Tr. 20). For all of these reasons, the ALJ's decision to discount Dr. Price's opinions as "not consistent with or supported by the record as a whole" is supported by substantial evidence.

The ALJ also discounted Dr. Price's opinions because they were written "after [Rines'] date last insured." (Tr. 20). Rines points out that Dr. Price attempted to relate his limitations back to the relevant period. (Doc. #13 at 11-12 (quoting Tr. 329)). As the Commissioner correctly observes, however, "the ALJ did not state to the contrary, and Plaintiff provides no authority demonstrating it was reversible error for the ALJ to observe the later date of the opinion[s]." (Doc. #16 at 13 (quoting *Shepard v. Comm'r of Soc. Sec.*, 2017 WL 104095, at *7 (W.D. Mich. Jan. 11, 2017))). Moreover, it was appropriate for the ALJ to highlight the dates of these opinions because, despite what Dr. Price said in his addendum, there is no indication that the limitations he assessed in January 2015 were in effect as of September 2013. (Tr. 329). Indeed, the evidence is to the contrary; whereas Dr. Price opined in January 2015 that Rines could not lift more than 5 pounds, he had opined in August 2014 that Rines was capable of lifting 15 pounds. (Tr. 319, 326). Under the circumstances, it was entirely appropriate for the ALJ to note that Dr. Price's opinions were issued after Rines' date last insured. *See, e.g., Mellon v. Comm'r of Soc. Sec.*, 2016 WL 908895, at *11 (E.D. Mich. Feb. 9, 2016) (ALJ properly discounted treating physician's retrospective medical opinion where it was not supported by the medical records from the relevant time period).

The ALJ also noted that Dr. Price was not a specialist (Tr. 20), which was an appropriate consideration. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Rines argues that "[t]his is not particularly relevant" because the ALJ did not discuss all of the other factors for weighing opinion evidence set forth in 20 C.F.R. § 404.1527(c). (Doc. #13 at 12). This argument is not persuasive, as the Sixth Circuit has made clear that "an exhaustive factor-by-factor analysis" is not required. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Finally, the ALJ discounted Dr. Price's opinions because "the issue of disability is reserved for the Commissioner." (Tr. 20). Rines cries foul, claiming this statement is "meaningless boilerplate" because "Dr. Price never indicated that Mr. Rines was 'disabled.'" (Doc. #13 at 13). This is incorrect. In his August 2014 opinion, Dr. Price explicitly stated that Rines was "unable to work and needs to be on Social Security Disability Insurance" (Tr. 319), and the ALJ specifically referenced that sentence in his decision (Tr. 20 ("[Dr. Price] further opined [Rines] was unable to work ….")). Although Dr. Price might have not used the precise word "disabled," it is clear that Dr. Price was opining as to the ultimate issue of disability, and the ALJ reasonably discounted that opinion. *See, e.g., Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the doctor's] opinion because her conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner.").

For all of these reasons, the Court finds that the ALJ's decision to discount Dr. Price's opinions is supported by substantial evidence.

### 2. The ALJ's Assessment of Rines' Subjective
### Complaints is Supported by Substantial Evidence

Rines also argues that the ALJ erred in evaluating his subjective complaints. (Doc. #13 at 14-17). Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must then consider other evidence of pain, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations. *See* 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ provided several reasons for finding Rines' statements concerning the intensity, persistence, and limiting effects of his symptoms less than fully credible. (Tr. 19-21). First, the ALJ reasoned that Rines' allegations of total disability did not square with the medical evidence. (Tr. 19 ("[Rines'] alleged limitations are not supported by or consistent with the medical reports …..")). Specifically, the ALJ discussed how Rines improved with treatment, that he was able to carry forty-pound items in January 2014, and that the physical examination closest to Rines' date last insured was almost entirely normal. (Tr. 20 (citing Tr. 293, 300, 309-12)). The ALJ also mentioned Rines' routinely normal mental status examinations. (Tr. 20 (citing Tr.

241, 242, 254, 320, 330, 337, 339, 352, 354)). "As [Rines'] testimony conflicted with the objective medical evidence in the record, the ALJ did not commit reversible error by rejecting [the] testimony." *Bentley v. Comm'r of Soc. Sec.*, 23 F. App'x 434, 436 (6th Cir. 2001).

Second, the ALJ found that Rines' subjective complaints were inconsistent with statements made in his function report. (Tr. 19, 20). Specifically, the ALJ stated: "Claimant testified his wife does most of the household chores but she has stage 4 COPD and is on oxygen. In April and June 2014, claimant reported he performed a wide range of activities of daily living[]." (Tr. 19, 33, 54-55, 206-13, 315). Rines argues that the ALJ's decision to use the "fact that [his wife] does the household chores as a reason to impugn her husband's credibility is misplaced." (Doc. #13 at 15). But, this is not what the ALJ did. Rather, the ALJ noted discrepancies between Rines' hearing testimony – that his wife did everything except take out the trash and use the riding mower, and that he mostly went "from [his] couch to [his] chair, [his] chair to [his] couch" (Tr. 54-55) – and statements he made in April and June 2014 – indicating that he shopped, split cooking duties with his wife, helped her with housework, walked and fed his dogs, vacuumed, and paid bills (Tr. 207-09, 315).[5] Moreover, even if Rines' statements and hearing testimony were not inconsistent with each other, it was entirely appropriate for the ALJ to consider the extent of Rines' daily activities in finding that he was less than fully credible. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) ("Although the ability to do household chores is not direct evidence of an ability to do gainful work … [a]n ALJ may … consider household and social activities engaged in by the claimant in evaluating a claimant's

---

[5] Rines points out that these statements were made "more than eighteen months before the hearing," suggesting that his hearing testimony was not less than fully credible because his condition worsened over time. (Doc. #13 at 16-17). But, this argument ignores the fact that the ALJ instructed Rines to focus his hearing testimony on the period prior to June 30, 2014, his date last insured. (Tr. 30-31).

assertions of pain or ailments.") (internal quotations omitted).[6]

Third, the ALJ determined that Rines "has a sporadic work history, which is not indicative of someone real[ly] motivated to work." (Tr. 19). The regulations expressly permit an ALJ to consider "other factors" such as work history in evaluating a claimant's subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3)(vii); *Perreault v. Comm'r of Soc. Sec.*, 2015 WL 5592931, at *6 (W.D. Mich. Sept. 22, 2015) (inconsistent work history is a relevant credibility consideration). Rines argues that the ALJ erred in reaching this conclusion, claiming that he "worked 25 of 32 years, covering a time period from 1979 through 2013." (Doc. #13 at 17). As the Commissioner correctly points out, however, in many of those years, Rines' earnings were minimal. (Doc. #16 at 20 (citing Tr. 190-91)). And, Rines had no earnings whatsoever between 2008 and 2013. (Tr. 192). Given this evidence, there is no basis for the Court to invalidate the ALJ's rationale. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ"). In sum, Rines' challenges to the ALJ's evaluation of his subjective complaints are not persuasive.

For all of the above reasons, and upon an independent review of the entire record, the

---

[6] Rines also contends that his alleged "wide range of activities of daily living" are not performed without pain or the need to lie down, which he claims actually supports his credibility. (Doc. #13 at 16 (quoting Tr. 19)). But, the question before this Court is "not whether substantial evidence, or even the weight of the evidence, supports [Rines'] position. Rather, this court is only asked to decide if the record includes substantial evidence to support the Commissioner's determination." *Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 464 (6th Cir. 2007). Here, then, even if the ALJ overstated Rines' daily activities, remand is not required where the ALJ's credibility determination is otherwise supported by substantial evidence. *See, e.g., Tate v. Comm'r of Soc. Sec.*, 2014 WL 4536929, at *8 (E.D. Mich. Sept. 11, 2014) (even if ALJ erred in discounting claimant's credibility on one basis, such an error was harmless where the ALJ provided other evidentiary support for credibility determination).

Court concludes that the ALJ's decision is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Rines' Motion for Summary Judgment [13] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: September 6, 2017                    s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be

concise, and should address specifically, and in the same order raised, each issue presented in the objections.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 6, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager